All right, good afternoon. I am Justice Aurelia Buczynski and with me are my colleagues Justice Michael Hyman and Justice Mary Ellen Coughlin. We are in the First Division of the First Appellate Court District of Illinois and we are here today to hear case 1-22-0650, Kimberly Pace-Arquilla v. Venanzio-Arquilla. Could the attorneys please introduce themselves? First, the appellant. Good afternoon, Justices. My name is David Hyde and I represent the appellant, Kimberly Pace-Arquilla. Good afternoon, Justices. My name is Peter Rush and I represent the defendant appellee, Venanzio-Arquilla. Okay, fine. Mr. Hyde, we don't really give people 10-15 minutes. We try not to bother you too much with questions, but that will happen. And of course, you can reserve some time for rebuttal. Very good, very good, Justice. I will reserve five minutes for rebuttal and I will try to keep my remarks very brief. I know that this panel has reviewed carefully the briefs and the record in this matter and I'll just highlight what I think sort of my strongest position. I know that's something that you guys... Absolutely, we agree with all of that. Thank you very much. And I will keep this brief. So, we're here today to address the trial court's erroneous dismissal of my client's fraud claim based on the collateral attack doctrine. In addition, we also submitted with error for the court to not allow amendment at the trial court level. Principally, what our position is, is that the trial court misapprehended the nature of Kimberly's claim. And the collateral attack doctrine has no real application in this matter because the fraud claim advocated in Kimberly's complaint was not an attack on either the arbitration award nor the entry of that award as the judgment for dissolution of marriage. Rather, what this claim seeks is fraud damages that flow from fraudulent statements that happen to occur within the context of an arbitration. And under that... So, that means you're attacking a judgment because the arbitration award was made part of a judgment. Am I right? The arbitration award was made part of the judgment for dissolution of marriage. That is absolutely correct. So, and therefore, what you say is, well, we're not attacking the judgment, we're just attacking the fraud. But by attacking the fraud in a separate action, doesn't that judge have to consider that there was an arbitration that was made part of a judgment, and if there was something wrong with it, that would have been brought up in that other case. So, doesn't that mean that the collateral attack doctrine applies? So, I understand that position, Justice, and that was well articulated by Mr. Rushen for his client. But I think that that, again, fundamentally misunderstands what Kimberly's complaint was trying to do. What we're saying is that there were fraudulent statements, and those fraudulent statements were relied upon by Kimberly. We plead this in our complaint, and that as a result, fraud damages flow from that, from that reliance. Those damages, in part, are measured by the differential of the maintenance that would have likely had been awarded had Linazio told the truth. But it's not limited to that, Justice. There's other potential damages that flow from those fraudulent statements, such as the attorney's fees occurred, the arbitration fees that were incurred, the expert fees that were incurred within that proceeding. And those... All the damages, put the damages aside, because you don't even get the damages unless we find that the collateral attack doctrine doesn't apply. So, but your argument is that there was a fraud in arbitration. Now, just, right, that's a separate case has nothing, in your argument, it is separate and apart from the judgment, correct?  Okay. Now, that being so, does the... Are there any cases out there in Illinois, first, that support that type of action that you're proposing, that is, you know, an arbitration that was attacked separately? So, they're very thin on the ground, Judge. I don't care if it's thin. Is there any one? I was not able to find one. There were instances where, and it's, what we're talking about is slightly different than what most of the cases speak to. What most of the cases speak to, I think, is similar to what happened in Huff, which is one of the decisions by this court that both parties cited in our briefs. And in Huff, the issue, what the... Appelot in that case wanted to do was to vacate an arbitration work based on fraud. I did not find any cases that positioned it as we are trying to articulate the claim here, which is... Did you find any in any other jurisdiction? I did not find any. Again, there were... This is a, you know, I admit that this is a... We're advocating a position that is not... That is pretty unusual, but I think that... You know why it's unusual? I can hazard a guess, Justice, but... I'm not asking you to make that guess. But doesn't that, you know, I'm always taken by Sherlock Holmes and the bark of the Baskerville, but the dogs that didn't bark. The guilty person was the owner of the dogs. That's why they didn't bark. That was the murderer. So definitely have that here. I don't think we do, Judge. And sorry, Justice. What I... Fundamentally, I think in first principles, I think that fraud, wherever it occurs, should be something that can find redress within our justice system. And so if you lie and that causes somebody damage, you should be able to address that through the courts. And simply because that those misrepresentations and fraud occur within an arbitration that's then subsequently reduced to a judgment, shouldn't vitiate a plaintiff's access to justice and to redress. And that's... It is an unusual situation. And admittedly, I kicked Lexus pretty hard and nothing fell out that matched to what we're trying to do here. But I don't think that's... You gotta kick him with both feet. Just one foot. But I don't think that that's dispositive. Because again, going back to first principles, fraud should... We have common law fraud for a reason. And it's to prevent people from, you know, redress lies and misrepresentations that cause damage to somebody. And that's what we're seeing happened here. And it's not... The fact that part of those fraud damages are measured on, you know, what was ultimately entered as a judgment, shouldn't mandate the application of the collateral estoppel doctrine, the collateral attack doctrine here. So, but... Okay. So, your position is, there is nothing else you could do. Am I correct? That you kind of said, well, we can't go this route because the cases have been against us on on section 12, right? Right. We can't go 1401 because the Chicago Loop case. Right. Is there any other route? Well, so those two cases and the sort of line of cases that go up and down those two, I think speaks to another reason why the collateral attack doctrine doesn't apply here, which is the collateral attack doctrine holds that you can only attack a final judgment through approved statutory means or by direct appeal. But based on how things have developed with the unique situation of arbitration awards being reduced in judgment, you can't use 1401. Why? You say that based on the Chicago Loop? Right. Okay. So, you're a good lawyer. And it wasn't you. Okay. I understand it's not you, but I'm going to assume the lawyer below that was involved is as good as you. So, you're stuck with this record. I understand. Okay. It's not you, but you are a good lawyer. So, there is the fact that the other side was able to attack Chicago Loop and distinguish it on many grounds. Why couldn't the lawyer here have done that? Again, I can't really speak to what didn't happen. But that's what lawyers do. That's what lawyers do. The lawyer looked at the Chicago Loop. Your position is lawyers looks at Chicago Loop says, oh, we're done. This road is there's no way. But again, a lawyer looking at it, I mean, so many ways to attack that is inapplicable, starting with the facts being so widely apart from what happened here. But going down that road, there are many grounds. Well, why should a collateral attack doctor not apply when a lawyer doesn't even try to go a route that has been set for this type of situation? And there's a case that can be distinguished on several grounds. Well, but I do think the Chicago Loop fundamental holding it applies here, which is that you can't that 1401 can't be used to attack an underlying arbitration award because it's because 1401 only addresses a judgment. And while the judgment incorporated that arbitration award, I think that those two things are really hard to unpick, especially here. No, but which raises the issue of the judgment itself. Right. And the judgment itself states that this court expressly retains jurisdiction over the cause for the purpose of enforcing all of the terms of this judgment for dissolution of marriage, including all the terms of the final arbitration award and adjudicating all rights and interests expressly reserved herein. And the arbitration award states this, the court shall retain jurisdiction to resolve any disputes regarding maintenance. So you got all of that. What about that? Well, I think that there's several cases out there that speak to a trial court's ability to actually retain jurisdiction over certain things, such as and things like that. And I think that within this context, you know, based on what based on what the Chicago Loop case held, I don't think, you know, you can put a whole bunch of stuff in an order or a judgment. It's not necessarily effective. Wait a minute. Wait a minute. Domestic relations law, 101, the statute. Right. And now it's an order from domestic relations. You're saying they can't do that? It's done every day, dozens of times. And you know that. So how do you get around that? I mean, other than not talking about it in a breeze, I mean, that's a dog that didn't bark. You know, here it is. I mean, it's right there. I mean, how, you know, I'm trying to understand your position because it just seems that there are, we just went through several different avenues available to be a lawyer. And the one that had the lights blinking is the statute and more even the judgment. I just want to follow up on that same question. When I read all of this, the first thing I thought of was the analogy to forum shopping. You didn't want to go back in front of that domestic relations judge because you didn't get what you wanted. So, oh, let's go try a different division with a different judge and see if we can sneak it through. And that didn't seem like a very good way to handle this. As I indicated to Justice Hyman, I can't, I'm not going to hazard a guess to the decisions and strategic elections of the lawyers below. What I was, what we're trying to articulate here is that we feel that this is a viable avenue to seek redress for what occurred during this arbitration. I, you know, I fully understand that this is a challenging case and one that presents some pretty knotty issues. And, you know, I respect the justice's questions, but I think that ultimately I'd go back to my first principle position that this is something that should be able to find redress through a fraud, through common law fraud. You know, at the very least, this is something that the trial court should have afforded the plaintiff at the lower court level, an opportunity to better express what was going on and how the claim should be framed. Leave to amend is liberally granted. And while I understand that this was on an involuntary dismissal basis, I think the motion to reconsider and the briefing on that well articulated viable grounds for the trial court to provide the plaintiff at least one shot to make this claim into something that the trial court would understand. On this, the case was heard solely on briefs. I'm not even sure that there was a, there was a zoom oral argument held. I certainly didn't see it. There's no transcript in the, in the record of, of any, of any hearing. And, you know, under those circumstances, I think that, you know, there's some minimum amount of amendment that, that should have been afforded here that I think would have corrected the course. Any other questions of Mr. Hyde? All right then, Mr. Rush. Thank you, Justice Pachinski. And I think I want to follow up on a couple of things. First, in the line of questioning of Justice Hyman and you, Justice Pachinski, and that is when you claim in our jurisprudence system that an error was made by a tribunal, it is bedrock fundamental principle that you raise the error with the tribunal that made the mistake. The point being is give the judge a chance to fix the mistake so it's incumbent upon the lawyer to point the error out to the judge or the arbitrator that supposedly made that. And if you start with that bedrock principle, almost everything else in this case follows from that. All of the statutes, all of the case law. I would point out that in the system, the court system that we live in, the city of Chicago is one of the most sophisticated and multifaceted court systems in the world. Now, why is that important? Why it's important is because we have specialists. We have special courts that deal with special things. And all three of you have been involved with such special courts. Well, I don't think the special courts has much to do with this, because this case, if it was in a county that has one circuit judge, the result from the appellate court of view in the trial view would be the same, wouldn't it? Oh, it should be, your honor. But I mean, it doesn't matter whether a county has special divisions or not. I mean, so that's irrelevant to our decision-making. It's irrelevant, but it's more apropos because the court system that issued this decision was an expert in domestic relations. I don't like that, but your position is, as I understand, there were many avenues that could have been taken here that weren't. Would you agree with that? Yes. Okay. And why don't you tell, I mean, we talked about some of them. First was section 12. Was that a potential avenue, even though it may have been a more difficult hill to climb, but do you agree there was a potential avenue? I do. And what about 1401? I do. And under the judgment itself, which incorporated the arbitration agreement, which said also about- I do. Okay. So are there any others that you can think of that could have been taken? No. The only point being is that you go back to that place. All of those statutes say, go back, go back and modify, go back and vacate, go to the judge that made the error. And this judge was in the domestic relations division. So following Justice Paczynski's comment about forum shopping, you're supposed to stay in the domestic relations division to challenge a domestic relations decision. But that's, I mean, we're talking about the collateral attack rule here, not about divisions. So the only, it's, again, an unofficial thing that happens in Cook County, but it's the collateral attack rule. I mean, even if the judge heard domestic relations in law division cases, you'd still argue collateral attack. And I'm arguing it in spades here because they did go to the law division. That's the definition of collateral. It's the language used at the end of Chicago Loop, a roundabout way of finding a way to modify or vacate an arbitration award. And the reason this panel used the word roundabout was because it was collateral. And at least in that case, they tried to invoke the Federal Arbitration Act. They tried to invoke section 1401. And I think, quite frankly, to Mr. Hyde's credit, as I read the reply brief, they've conceded that they, that he thinks, the trial lawyer didn't do that because he concluded they would be dead ends. In other words, that the statutes absolutely precluded the very relief that was being sought. And Chicago Loop made that abundantly clear that in an arbitration, which is confirmed by a judgment of the Circuit Court of Cook County, there is no fraud by the judge who issues the confirmation order. And under the cases cited in Chicago Loop, there's no cause of action under the Federal Arbitration Act, under any arbitration act, or under section two, section 1401, which allows you to raise a fraud in the arbitration as a means for vacating or modifying the judgment of the court, or even the arbitration award. So yes, I am saying that in spades, that this is a collateral attack. I think Mr. Hyde is struggling for a good reason. It is very clear. And in page four of his reply brief, he says, defendants' misstatements caused the floor for the maintenance to be set lower than it should have. That's the maintenance in the arbitration. We're asking for a modification in a roundabout way that's not permitted by statute. And I posit, although it's completely a posit, that the reason they went into the law division is because they knew Chicago Loop absolutely precluded this claim under all the mechanisms that allow for it, which are section 1401 and section 12. When you select- Well, wait a minute. I thought we just said that 1401 was a possibility. It's a possibility, but it's- Well, now you're arguing against it. So maybe we should- Well, I don't- You should have a relief. I mean, you can't have it both ways. You can't make both arguments. You didn't say you're alternative. I mean, you're making two arguments that are effectively opposed, which I don't know. Explain that. Okay. Well, the legislature has spoken. Just as they allow actions for all kinds of- Well, but 1401, I mean, you distinguish the Chicago Loop case. Why could they? They could have gone under the 1401, couldn't they? They could have brought it. I agree with it. Yes. Well, maybe Chicago Loop doesn't apply. I don't know. No, personally, I think it does apply. I think it's- It does apply. So they didn't have that route. Okay. So maybe they do. So now things are changing a little bit because they have to have an ability. If there was fraud here, as they said, there should be a remedy. So let's agree then. Okay. So now 1401 is no good. Section 12 is no good because the law is pretty much against them on that one. There was a possibility you could attack that. So maybe they made a good move here. Is that your argument? No, it's actually not my argument. I know, but that's what you're saying. Well, no, you're- You're trying to have it both ways. You're saying that they don't have a leg to stand on to come in before the trial- I have a question. Mr. Rush, what's your best argument? The best argument is collateral attack doctrine. Now, the source of your authority to issue the relief that Justice Hyman is talking about has been repeatedly recited as the common law. I think the quote was, the common law should allow for a remedy. The common law has spoken, and it's in four different cases, which we cited to the court. The common law is Parks v. Nuff. The common law is John Allen and John Allen versus Bredow. The common law is Dean versus Kirkland. The common law is Hocker versus Welty, all cited at pages 21 and 22 of the appellee's brief. If he is pointing you to the common law to get the relief he's asking, that's foreclosed. Those cases say in no unmistaken terms that under the common law in the state of Illinois for what I can tell is the past century, you cannot bring a subsequent action based on an alleged false statement in the prior actions. Let's look at those cases. 1991, 1965, 1939, 1926, 1914. Pretty old stuff. Today, we're a lot more sophisticated today than we were back then. In 1990, we're talking over 30 years. Maybe it's time to revisit those types of cases. Law changes over centuries. Maybe that's something that needs to be looked at. Maybe his argument should be his last argument. He should have a right to replead. It's usually given generously. Let's see. I want a quote from his brief. Page six. Quaintip is not asking this court to legislate or amend any law. That includes the common law. The relief being asked for, they're not asking for that. They're not asking you to change and they said it. We're not asking you to change how. We're not asking you to change a statute. We're not asking you to change the common law. So now, if this court wants to change the common law, they may, but not even the plaintiff appellant is asking for it. Now, why not? Why not? Things have changed. It's modern times and the law is out of date. One word, finality. The bedrock principle of jurisprudence, second bedrock principle of jurisprudence in the it ends. And all the courts in the state of Illinois say that when you agree to arbitrate, you are reaching a binding agreement with respect to finality. With regard to those two statutes that we've talked about that foreclosed the proclaimed relief, the bedrock underlying logic is finality. The underlying bedrock principle of the common law for the past 100 years that you don't try, retry and re retry cases. Anytime a litigant says, I think there might have been some false testimony in the prior case is finality. There is no end. There are no end of the number of courts you can go to. There are no end to a 12 day hearing over a four month period where you can say, I think that might not have been right. I think we have to have a second trial outside the arbitration agreement, which will retry what happened in the arbitration, not subject to the arbitration agreement. My head gets numb trying to imagine what this even looks like. But Mr. I think, I think Justin Timon's question was correct. Okay. This is now 2023. Right. Are you saying there is no relief anywhere that this plaintiff can have having now uh, apparently found out or believing information that her husband committed fraud, there's nothing she can do? Is that right? No. Well, I would say that they had an opportunity that when they supposedly learned about the fact, um, they had a year to bring a 1401 case. Now the judge said, please bring this back to me if you have any issues and they had the information they had a they did not bring it up. The Illinois arbitration act states the reasons the legislature is allowed for you to challenge an award from a binding arbitration award. The legislature has not authorized this challenge. Now I, well, I don't know about that. It's section 12 of the arbitration act says that it could be interpreted in several ways. It may be interpreted in several ways, but we're not being asked to change how we're not being asked to change. I think it was the Lafarge case, which is cited in Chicago loop, which says you cannot under the arbitration acts bring a claim based on some fraud that occurred in the arbitration. The acts don't allow it. It is a creature of statute as many other claims are as well. I understand it's 2023 and we're all a lot smarter than we may have been once. But when the legislature enacts a remedy and defines what its limits are, I understand it's unfortunate that litigants sometimes don't fall within the confines of the limits and they have an injury that the statute, which authorizes the action does not allow, but that's a matter for the legislature. All right. Are you saying let's, let's get to the chase. Are you saying yes or no? Did the, the Kimberly have a way to correct this? Yes or no. I personally, I think her best chance to was corrected was to rush back to the trial court within the year that she had left under 1401 and try to make a claim. Why don't you go back now? Because the judgment said, and under Illinois law, you know, maintenance can be changed, right? So on this with the date of this, and so the maintenance could be changed. Circumstances change. And one of the circumstances was that there was fraud. Why couldn't the trial, the domestic relations court hear that? That would be up to the domestic relations court. That is a possibility. So you, you admit that that's a possibility. Your honor, to be honest, I think no, because they've blown the statute of limitation, which allows for that. There is no statute of limitation maintenance. You can always go back. Right. Well, if you're saying, can you bring them? I'm not. And candidly, your, your honor, I could, I am not a divorce. Okay. So when I'm asking the divorce case question, because maintenance is a type of situation, things change, right? And maintenance. And that's why the judgment. And even the arbitration judgment said, the judge, the ward said, you could go back on maintenance because maintenance things change. And one of the things that changed here was after the fact, she learned that she had been lied to. And that's her allegation. That to me is a different claim than one under section 1401, which seeks to amend or modify a judgment or correct an error. I think that for the principle of finality, the Illinois legislature has said there is a time limit on a claim like that. Well, okay. Well, you can have it that way, but you said you're not a domestic relations. And we're not talking about, we're talking about domestic relations. We're talking about, you're asking me for what happens in domestic relation laws when somebody wants to change maintenance based on newly developed facts. I candidly, the advice will be what you're paying for it, which will be worth nothing. Because I don't know. That's what I'm asking. I appreciate that. I appreciate that. So I think if the justices have any more questions, I think it's precluded. You either have a claim or you don't under the law. I don't think they have a for what they're asking for here. What could they ask for in some other proceeding at some other time? I don't know. Okay. So what you're really saying is they, you don't think they have a claim in the chancery division or in the law division. And you're not sure if they had a claim in the domestic relations division, but they should have tried it. That's my, in other words, go back to the domestic relations division. We have a whole other part of the argument that I'm happy to address if the justices desire, but that the arbitrator in this case, by the plain language of a ruling was not in any way misled or uncertain about what this supposed estimate was. So, but personally, yes, I would go back to the judge and say, there's a terrible travesty here. There was an absolute falsehood perpetrated upon the court and I throw myself on the mercy, but even that claim, the Illinois legislature says you've got two years to do that. No, no, no. We're talking about the, we're talking about the judgment. Again, we're talking about the judgment. You said you don't know about domestic relations. So let's leave it at that. Okay. So let's talk about the fraud because we all say there's a fraud out there. And we, of course, having won below, we can argue any reason. And I would challenge the court to determine what is the fraud? What was said? We're not, we're not here on the merits really. Right. Okay. We're not going to decide the merits. All right. All right. Well, the long and short of it is part of the merits is whether this case states a claim under 2615, we moved under 2619.1. We moved on four grounds. Two of them were under 2619A4 and A5. A5 is a prior judgment. A5 is untimely. A4 is a prior judgment. Courts in the circuit court of Cook County every day issue final judgments based on those barring claims that may otherwise have had some merit if they'd have been filed in the right place or if there hadn't been a prior judgment. We claim that those entitle us to win on the merits. With regard to 2615, we point to that hundred-year-old line of cases, which says the common law says, this is not a case. This is not a case under the common law. You cannot repeatedly bring actions wherever you file them for fraud in an arbitration, or literally, even in a prior judicial proceeding in a subsequent different case. It's just forbidden. It is against the law. It's against the common law. And then finally, and I don't think it sounds like the justices don't want to hear it, but that the complaint is stated doesn't state a claim because the only estimate that my client ever made and that the arbitration award ever talks about is an estimate in the first quarter of 2019 of what his minimum income was going to be for 2019. This is a domestic relations decision based on the standard of living of a family in 2015 when the marriage broke up. That's the standard. What was the standard of the maintenance decision? But more importantly, the statement that he made and the arbitrator stated it, that it was an estimate of his minimum 2019 income. And I just ask you to take a moment because literally I did it myself in the past two days. How can that statement be false? So you're getting into the merits again, 2615. We're not getting into merits. Okay. The statement can't be false and I won't go any further. It can't be false unless you fail to meet the minimum. That's the only way that statement can be false. If I say I'm going to make $50,000. We only get to that argument if we don't, the collateral tech doctrine doesn't apply, right? I agree. I agree. Totally agree, Your Honor. Okay. Any other questions of Mr. Rush? No. Hearing none, Mr. Hyde, if you could wrap it up briefly, please. I'll be very brief. Best argument. Best argument. Best argument. Mr. Rush is trying to have it both ways. And at every turn in their brief and in his argument today, they're trying to have it both ways. They're saying you have to take these avenues, but then at the same time saying that all of these avenues are foreclosed and futile. And again, fraud should find relief wherever it is found, whether it's in an arbitration or anywhere else. What about the avenue going back to the trial court? Is that foreclosed? Judge, I don't know the answer to that. From a domestic relations standpoint, I don't know if it's foreclosed or not. What I do know is that within the context of this case, what was presented was the Arbitration Act of 1401. There's compelling case law out there on both of those fronts that say that those avenues are totally foreclosed based on Huff and Chicago Lube. Now, I know that there's some disagreement about that point, but that is the position that you've taken here. And with that position, I think what naturally follows is that there should be a remedy somewhere. And the fact that lies happen within an arbitration does not and should not insulate that from liability. And ruling otherwise would encourage that behavior and chip away at the foundation. The lawyer should have done what the agreement said, the judgment. Perhaps justice, but I think that countenancy and providing a situation where this is non-addressable is not the way that things should work. Okay, any other questions for Mr. Hines? Hearing none, I'd like to thank both of you for your excellent arguments and the briefs, which were very well written. We are familiar with the briefs, the record, and everything else that's gone on in this case. We'll take it under advisement. And this court is adjourned.